

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00571-CV

**IN THE INTEREST OF A.E.J.**, a Child

From the 288th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA01290
Honorable Charles Montemayor, Associate Judge Presiding

Opinion by:   Rebeca C. Martinez, Chief Justice

Sitting:      Rebeca C. Martinez, Chief Justice
              H. Todd McCray, Justice
              Velia J. Meza, Justice

Delivered and Filed: February 12, 2025

AFFIRMED

Father appeals the trial court's order terminating his parental rights to his young child, A.E.J.[1]  On appeal, Father argues the evidence is legally and factually insufficient to support the trial court's predicate and best-interest findings under section 161.001(b)(1) and (2) of the Texas Family Code.  We affirm.

### BACKGROUND

On August 25, 2023, two-year-old A.E.J. was removed by the Texas Department of Family and Protective Services (the "Department") from her maternal grandmother's care due to medical

---

[1] To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

and physical neglect. A.E.J. requires feeding through a G-tube in her stomach and is developmentally delayed. Mother had left A.E.J. with the grandmother when she moved to Colorado where Father was incarcerated. Specifically, the Department removed A.E.J. based on allegations that the grandmother left A.E.J. "in a room throughout the entire day, 24 hours a day, seven days a week;" A.E.J. was not being fed properly, was severely underweight, and had an infection due to improper cleaning of the feeding tube; and, due to heavy marijuana smoke inside the grandmother's house, the home health nurses were not able to provide services to A.E.J. In addition, the removing caseworker testified the grandmother stated she did not want to provide the necessary medical care to A.E.J. or take her to doctor appointments, did not want A.E.J., and "wished that she would go away." After removal, A.E.J. was placed with a foster family that could meet her medical needs. The Department filed its Original Petition for Protection of a Child, Conservatorship, and Termination in Suit Affecting the Parent-Child Relationship on the day the child was removed.

Father was served with notice of the suit on September 6, 2023 at the Limon Correctional Facility in Colorado. A family service plan for Father was filed on September 15, 2023, which required him to complete substance abuse assessment, parenting classes, a psychological assessment, and individual counseling, and obtain stable employment and housing. An attorney ad litem was appointed to represent Father in the proceedings. Father appeared virtually at the full adversary hearing held on November 2, 2023, but did not appear at subsequent hearings or at trial.

On June 27, 2024, the trial court heard testimony by the Department caseworker, Michelle Saldana, who stated Father had not completed any of the services on his family service plan, had not availed himself of virtual visits with A.E.J., and had stopped communicating with the

Department.[2]  At the conclusion of the bench trial, the trial court found that Father had constructively abandoned A.E.J. and failed to comply with his service plan.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O). The trial court further found that termination of the parent-child relationship was in A.E.J.'s best interest.  *See id.* § 161.001(b)(2).  The trial court signed an order terminating Father's parental rights to A.E.J. and appointing the Department as permanent managing conservator of the child.[3]  Father timely appealed.

## STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Texas Family Code, the Department has the burden to prove by clear and convincing evidence that parental rights should be terminated pursuant to one of the predicate grounds in subsection 161.001(b)(1) and that termination of parental rights is in the best interest of the child.  *Id*. § 161.001(b)(1), (2). In reviewing the legal sufficiency of the evidence to support these findings, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true."  *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).  In reviewing the factual sufficiency of the evidence, we consider disputed or conflicting evidence.  *Id.* at 345.  "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient."  *Id.* at 245 (quoting *In re*

---

[2] Prior to the start of trial, Father's trial counsel requested a continuance and argued that she encountered significant difficulty contacting Father. Counsel did not file a sworn affidavit or otherwise produce admissible testimony to properly place the issue before the trial court, nor does Father argue such upon appeal. Accordingly, we do not consider these arguments in the disposition of this appeal.

[3] Mother's parental rights to A.E.J. were also terminated at the conclusion of trial.  Mother did not file a notice of appeal.

*J.F.C.*, 96 S.W.3d at 266). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *Id.*

## PREDICATE GROUNDS

On appeal, Father argues the evidence is legally and factually insufficient to support the trial court's predicate findings that he failed to comply with his service plan under subsection (O) and constructively abandoned the child under subsection (N). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N), (O). When, as here, a trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Because we affirm pursuant to ground (O), we consider only that predicate ground and best interest. *See id.* (explaining that only one predicate finding under section 161.001(b)(1) and a best-interest finding is necessary to support a judgment of termination); *see also In re N.G.*, 577 S.W.3d 230, 234 (Tex. 2019) (per curiam).

### Predicate Ground (O)

Section 161.001(b)(1)(O) provides a ground for termination of a parent-child relationship upon proof, by clear and convincing evidence, that a parent:

> failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child[.]

TEX. FAM. CODE ANN. § 161.001(b)(1)(O). Courts take a strict approach to subsection (O)'s application. *In re E.G.K.*, No. 04-22-00681-CV, 2023 WL 2777510, at *4 (Tex. App.—San Antonio Apr. 5, 2023, no pet.) (mem. op.). The burden of complying with the court ordered service plan is on the parent. *In re S.J.R.-Z.*, 537 S.W.3d 677, 690 (Tex. App.—San Antonio 2017, pet. denied). "Substantial compliance with a court ordered service plan does not constitute compliance

under subsection (O), and a parent's failure to complete one service plan requirement is sufficient to support termination under subsection (O)." *In re E.G.K.*, 2023 WL 2777510, at \*4 (quoted citation omitted); *In re Z.M.M.*, 04-20-00372-CV No. 04-18-00099-CV, 2019 WL 4805399, at \*5 (Tex. App.—San Antonio Oct. 2, 2019, no pet.) (mem. op.). "Thus, a parent may violate subsection (O) even when the parent had sporadic incidents of partial compliance with the court order." *In re J.F.C.*, 96 S.W.3d at 278.

Father first argues that he was not the reason for A.E.J.'s removal by the Department. Specifically, he asserts he was not the person who abused or neglected A.E.J. *See* TEX. FAM. CODE ANN. §161.001(b)(1)(O) (". . . child's removal from the parent under Chapter 262 for the abuse or neglect of the child."). The Texas Supreme Court recently addressed this argument in *In re A.A.*, 670 S.W.3d 520, 526–28 (Tex. 2023).

In *A.A.*, the mother argued she was a "non-offending parent" — that the child had been removed due to the conduct of the other parent — thus her rights could not be terminated under subsection (O). *Id.* at 526. In rejecting the mother's argument, the Supreme Court explained that "removal of a child under Chapter 262 is not just a physical act," rather it "includes the transfer by court order of the bundle of rights that the law gives a parent by default from the parent to DFPS." *Id.* at 527–28. The Supreme Court determined the factual predicate to (O) — removal from the parent—was satisfied after reviewing the affidavit in support of removal and the trial court's findings. *Id.* at 529–30.

Here, after the Department filed its petition and removal affidavit, the trial court signed a temporary emergency order under Chapter 262. The removal affidavit attests that A.E.J. had been left in the care of her maternal grandmother while Father and Mother were incarcerated. The affidavit detailed (1) A.E.J.'s special medical needs requiring home nursing services, (2) the

maternal grandmother's daily habit of smoking marijuana while serving as A.E.J.'s primary caregiver, (3) Mother's statements about not wanting to care for A.E.J., (4) Mother's lack of compliance with conditions of parole, including use of illegal substances, (5) Mother's history of neglect of her oldest child, and (6) that Father did not identify relatives or friends as potential placements. The order granting the removal mentions Father by name and finds "continuation in the home of [Mother] or [Father] would be contrary to the child's welfare." The order grants the Department temporary managing conservatorship, including "the right of physical possession."

Consistent with the removal order, the order following the adversary hearing found "it is contrary to the welfare of the child, for [A.E.J.] to remain in the home of [Father]," "the urgent need for protection required the immediate removal of [A.E.J.]," and "there is a substantial risk of continuing danger if [A.E.J.] is returned to the home of [Father]." There is no indication in the record that Father challenged these orders by mandamus, nor is there any indication Father argued the factual predicate to (O) had not been met before the trial court.

We hold the record contains sufficient evidence A.E.J. was removed from Father under Chapter 262 for abuse or neglect, as required by subsection (O). TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

Turning to the evidence concerning Father's compliance with his service plan, the Department's caseworker, Michelle Saldana, testified she mailed Father's service plan to him at the facility where he was incarcerated in Colorado. On October 30, 2023, she discussed the details of the service plan with Father on the telephone. He was required to complete parenting classes, individual counseling, psychological assessment, and substance abuse assessment, and to obtain stable housing and employment. According to Saldana, Father understood the services he needed to complete in order to comply with the court ordered service plan. Saldana understood that Father

was going to find out what jail programs were available and call her back with the information, but he never did. Father also did not return a signed copy of his service plan. Saldana called the correctional facility to inquire about what services were available to Father, but the facility "was not able to provide any information." She also called the facility several times, speaking to several different officers, and "sent JPay emails almost weekly," which she paid for out of her own pocket, in attempts to contact Father but all were unsuccessful. The facility staff informed Saldana they could not force Father to add her to his call list and being on the call list was required for communications. Saldana also mailed Father certified letters and received the green cards back with the "Limon Post Office" stamp. Even though she enclosed stamped return envelopes, she got nothing back from Father. None of her written correspondence to Father was ever returned unopened.

During her second and last telephone call with Father on March 7, 2024, Father told Saldana he "was going to jail programs." But Father never provided Saldana with any specifics about the type of program or any proof of participation or completion. During that call, Saldana again asked Father to add her to his call list at the facility so she could stay in contact with him and set up virtual visits with A.E.J. However, Father never added Saldana to his call list and never got in touch with Saldana again. Saldana testified that as of the date of trial on June 27, 2024, she had no information as to whether Father had engaged in or completed any services at the Colorado facility.

Father additionally argues that he was unable to comply with the service plan due to his incarceration in Colorado and he is entitled to the defense to termination under (O) provided by section 161.001(d). Section 161.001(d) precludes termination under subsection (O) if:

> a parent proves by a preponderance of evidence that: (1) the parent was unable to comply with specific provisions of the court order; and (2) the parent made a good

> faith effort to comply with the order and the failure to comply with the order is not attributable to any fault of the parent.

TEX. FAM. CODE ANN. § 161.001(d).  Subsection (d) expressly places the burden on the parent to prove by a preponderance of the evidence that (1) the parent was unable to comply with the specific services and (2) made a good faith effort to comply such that noncompliance is not due to any fault of the parent.  *Id.*; *In re D.L.S.*, No. 03-20-00369-CV, 2020 WL 7041564, at \*4 (Tex. App.—Austin Nov. 30, 2020, no pet.) (mem. op.).  A parent's incarceration during the termination case does not itself establish an inability to comply with a service plan.  *In re D.L.S.*, 2020 WL 7041564, at \*4; *In re S.J.R.-Z.*, 537 S.W.3d at 690 (holding that the parent bears the burden to comply with the service plan).

Here, Father failed to assert the subsection (d) defense in his pleadings or during trial and provided no evidence to support it.  A party waives the affirmative defense provided by section 161.001(d) by failing to plead it in the trial court.  *In re D.L.W.*, No. 14-22-00654-CV, 2023 WL 1460548, at \*5 (Tex. App.—Houston [14th Dist.] Feb. 2, 2023, no pet.) (mem. op.); *In re N.B.*, No. 12-22-00236-CV, 2022 WL 16843243, at \*3 (Tex. App.—Tyler Nov. 9, 2022, pet. denied) (mem. op.).  Thus, the subsection (d) defense may not be raised for the first time on appeal. *In re D.L.W.*, 2023 WL 1460548, at \*5; *In re R.A.B.*, No. 08-22-00247-CV, 2023 WL 3672050, at \*9 (Tex. App.—El Paso May 25, 2023, pet. denied) (mem. op.); *In re A.M.*, No. 14-23-00415-CV, 2023 WL 7206735, at \*7 (Tex. App.—Houston [14th Dist.] Nov. 2, 2023, pet. denied) (mem. op.).  Because Father failed to plead and prove the subsection (d) defense in the trial court, we reject Father's argument that subsection (d) precludes termination based on his failure to complete his service plan.  *See In re D.L.W.*, 2023 WL 1460548, at \*5.

The evidence showed Father received his court-ordered service plan, discussed the services with Saldana on the phone in October 2023 and in March 2024, and understood what services were

required to retain his parental rights. Father never replied back to Saldana about the types of services available at the correctional facility. Even though Father told Saldana in March 2024 that he was "going to jail programs," he never provided Saldana with any details or proof of participation or completion. Despite requests from Saldana, Father never placed her on his call list so they could stay in communication. Saldana made multiple efforts to contact Father through phone calls, emails, and certified letters sent to the facility but received no replies from Father. Jail officials told Saldana it was Father's responsibility to add her to his call list if he wanted communication with her. As of the date of trial in June 2024, Saldana had no information showing Father had completed any of the services on his plan, and Father did not appear to testify otherwise.

We overrule Father's arguments on appeal and conclude the evidence is legally and factually sufficient to support the trial court's finding that Father failed to comply with the requirements of his service plan under subsection (O). *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

### BEST INTEREST

Father argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in the best interest of A.E.J. *See id*. § 161.001(b)(2); *In re J.O.A.*, 283 S.W.3d at 344–45.

There is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, it is equally presumed that "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). In determining whether the child's parent is willing and able to provide the child with a safe environment, the trial court should consider the relevant factors set out in section 263.307(b). *See* TEX. FAM. CODE ANN. § 263.307(b).

In addition to these statutory factors, in considering the best interest of the child, a factfinder may also consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).  These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *See id.*; *accord In re E.C.R.*, 402 S.W.3d 239, 249 n.9 (Tex. 2013).  The *Holley* factors are neither all-encompassing nor does a court need to find evidence of each factor before terminating the parent-child relationship.  *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *see In re E.A.R.*, 672 S.W.3d 716, 722 (Tex. App.—San Antonio 2023, pet. denied) (noting that a best-interest finding does not require proof of any particular factor).  "Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re E.A.R.*, 672 S.W.3d at 722 (quoting *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio Jul. 25, 2018, pet. denied)).  Finally, in determining whether termination of the parent-child relationship is in the best interest of a child, a factfinder may also judge a parent's future conduct by her past conduct.  *In re E.A.R.*, 672 S.W.3d at 722; *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). The predicate grounds for termination may also be probative of best interest.  *In re C.H.*, 89 S.W.3d at 28; *In re E.A.R.*, 672 S.W.3d at 722.

The trial court's best-interest finding is supported by legally and factually sufficient evidence in this case.  Saldana testified A.E.J. was two years old at the time of removal and Father

had no visits with A.E.J. during the 10-month pendency of the case. Saldana informed Father he could have virtual visits with A.E.J. if he added Saldana to his call list, but Father never did. Further, Father's failure to make the effort necessary to comply with his service plan indicates he did not have the motivation to seek out the required services and make the changes necessary to maintain his parental rights. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of his child that he does not have the ability to motivate himself to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE ANN. § 263.307(b)(10), (11) (providing courts may consider willingness and ability of child's family to seek out, accept, and complete counseling services and willingness and ability of child's family to effect positive environmental and personal changes within a reasonable period of time); *Holley*, 544 S.W.2d at 371–72 (listing parental abilities of individual seeking custody and programs available to assist individual as best-interest factor).

While Father's incarceration during the termination case does not alone support termination, it is a factor to be considered. A parent's inability to maintain a lifestyle free from arrests and incarcerations is relevant to a trial court's best-interest determination. *In re F.M.A.*, No. 04-16-00318-CV, 2016 WL 4379456, at *3 (Tex. App.—San Antonio Aug. 17, 2016, pet. denied) (mem. op.). The trial court, as the trier of fact, was entitled to measure Father's future conduct by reference to his past conduct. *In re E.D.*, 419 S.W.3d at 620. Further, a parent's arrest and incarceration exposes a child to potential emotional distress and instability. *See In re S.M.L.*, 171 S.W.3d 472, 479 (Tex. App.—Houston [14th Dist.] 2005) ("When parents . . . repeatedly commit criminal acts that subject them to the possibility of incarceration, that can negatively impact a child's living environment and emotional well-being."). Due to the limited contact she was able to have with Father, Saldana did not know what offense Father was incarcerated for committing

or whether he had been previously incarcerated. Father told her he was scheduled for release in October or November 2024 and wanted to be a parent to A.E.J. However, Father did not state he had a plan to find stable housing and employment upon release or a plan to provide A.E.J. with the necessary medical care.

Saldana testified that A.E.J. has special medical and developmental needs. A.E.J. is on a special diet and still requires G-tube feedings five times per day. She has gained weight and weighed 34 pounds at the time of trial. A.E.J. is walking and talking; when she was removed, she could do neither. A.E.J. has a minimum of three medical appointments each month and attends therapy sessions twice per week. The current foster home in Sugarland, Texas is a safe and appropriate environment and is able to meet all of A.E.J.'s medical and physical needs. A.E.J. is emotionally bonded with her caregivers. Although the current foster home is not planning to adopt A.E.J., she can stay there until a permanent placement is found.

With respect to permanency, Saldana testified the Department recently learned of a potential placement with a paternal uncle. Saldana has been in contact with the uncle and has requested a preliminary home study. The uncle is aware of all of A.E.J.'s medical needs and is willing to adopt her and provide the necessary care.

In Saldana's opinion, termination of Father's parental rights is in A.E.J.'s best interest due to her ongoing special medical and developmental needs, Father's incarceration and the uncertainty of Father's ability to provide a safe and stable home environment upon release, and Father's lack of engagement with A.E.J. and compliance with his service plan during the case.

Given the evidence noted above, we conclude the evidence is legally and factually sufficient to support the trial court's finding that termination of the parent-child relationship with Father is in A.E.J.'s best interest.

We affirm the trial court's termination order.

Rebeca C. Martinez, Chief Justice